IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ENRICO PERRAGLIO,

    Plaintiff,

v.                                                            CV 08-0351 WPL/RHS

STATE OF NEW MEXICO, DEPARTMENT
OF GAME AND FISH; AND LAURA
ROMERO, IN HER INDIVIDUAL AND
OFFICIAL CAPACITY,

    Defendants.

**ORDER**

Defendants have filed a motion in limine to prevent Plaintiff from using a tape recording as evidence at trial or in response to a summary judgment motion. Defendants contend that the recording was made illegally. I conclude that Defendants have not met their burden of establishing that the recording was made illegally. Therefore, the motion in limine will be denied.

**FACTUAL BACKGROUND**

Plaintiff alleges that he was fired by the New Mexico Department of Game and Fish because he is male. Less than a month before he was fired, he placed a tape recorder on the counter of his workstation, which was in a shared work area. Although the recorder was out in the open, he did not ask anyone if he could record their conversations, nor did he inform others about the recorder. He left the recorder on for two days. (Doc. 46 Ex. 1.) During one of those days, it captured a conversation between a temporary employee named Lora Romero and Plaintiff's supervisor, Laura

Romero, who is a Defendant in this case.[1]  The sound quality of the recording is poor and it is difficult to understand much of what the women said, though it is clear that they were discussing a male employee.  One of the women indicated that the employee told her he was thinking about quitting.  She said, "If he wants to quit, let him quit" and "I would be better off."  The same woman seems to mention applicants for another job.  She says something like, "He doesn't want another woman . . . here" and she was "not supposed to talk about this," but there are two people "in the top" and she was "tempted to go with the female just because of that."

## THE FEDERAL WIRETAP ACT

With certain exceptions, the federal wiretap act prohibits the interception of oral communications.  *See* 18 U.S.C. § 2511; *see also Quigley v. Rosenthal*, 327 F.3d 1044, 1047 & n.1 (10th Cir. 2003) (referring to § 2511 as part of the "federal wiretap act").  Any oral communication that was intercepted in violation of the act cannot be used as evidence in court.  *See* 18 U.S.C. § 2515.  The act defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation . . . ."  18 U.S.C. § 2510(2).  Relying on the act's legislative history, the Tenth Circuit has held that the definition of "oral communication" was meant to parallel the "reasonable expectation of privacy test" set out in *Katz v. United States*, 389 U.S. 347 (1967).  *United States v. Longoria*, 177 F.3d 1179, 1181 (10th Cir. 1999).  Therefore, to constitute an oral communication within the meaning of the act, the participants must have had an actual, subjective expectation of privacy (that is, that the conversation was not subject to interception), and this expectation must be one that society would objectively consider reasonable.  *Id.* at 1181-82.

---

[1] Because of the similarities between the women's names, I will refer to Laura Romero as "the supervisor" and Lora Romero as "the temp."

## *The Parties' Arguments*

In the memorandum in support of their motion in limine, Defendants contend that the federal wiretap act makes it unlawful to intercept an oral communication unless a party to the communication has given prior consent. They do not cite the definition of "oral communication" or argue that the participants in the conversation had a reasonable expectation of privacy. Instead, they seem to argue that the recording is inadmissible simply because Plaintiff admitted that he did not have permission to make it.

In his response to the motion in limine, Plaintiff notes that Defendants submitted nothing to indicate that the participants in the conversation had a subjective expectation of privacy. He further argues that even if they had a subjective expectation of privacy, that expectation was not objectively reasonable because the conversation occurred in a workplace that was open to the public.

Plaintiff attached an excerpt from his deposition and an affidavit to his response. In the deposition, Plaintiff stated that when the conversation occurred, the supervisor was in her cubicle and the temp was in the "doorway" of the cubicle with her back "turned to the exterior." (Doc. 46 Ex. 1.) The recorder was approximately four feet away. Plaintiff came into the office while the conversation was happening and "was standing right at the edge of the office" about eight feet from the cubicle, but the supervisor and the temp apparently did not know he was there. (*Id.*) Plaintiff's deposition testimony suggests that he could not actually hear the conversation as it occurred. In describing what was said in the conversation, he made comments such as "if I remember the tape right" and "I had to put head phones on to clarify it." (*Id.*)

The affidavit states that the office was open to the public and to staff from other parts of the building. The only thing separating the office from the main lobby of the Game and Fish Department was a counter that extended the entire width of the office. (*Id.* Ex. 2.) Members of the

3

public came to the counter for assistance, such as to apply for a license. Although the area behind the counter was closed to the public, it did not have any enclosure shutting it off visually or audibly from the area that was open to the public. According to the affidavit, members of the public were regularly in the office, and staff frequently came to the office. The office had three open workstations along the counter. Plaintiff had the central workstation. The supervisor's cubicle was approximately five feet behind the counter and was separated from the rest of the office by a divider that was approximately six-feet tall and that did not extend to the "roof."[2] In contrast to his deposition testimony, the affidavit indicates that Plaintiff could hear the conversation when he entered the area. The affidavit states, "Although I do not recall seeing others in the area at the time that I overheard the conversation at issue, people often were in the area, and to suddenly came into the area [sic]." (*Id.*)[3]

In reply, Defendants state that they are "surprised" that Plaintiff takes the position that the conversation was not private. (Doc. 48 at 4.) They argue that several facts demonstrate that the participants in the conversation had both an objective and a subjective expectation of privacy: No one else was present; the conversation occurred in the supervisor's cubicle; the conversation was difficult for Plaintiff to hear; the participants in the conversation used "a very hushed tone"; and the subject of the conversation was confidential. (*Id.* at 2-3.)

Along with the reply, Defendants submitted a copy of the recording, two pictures of the office, and affidavits by the supervisor and the temp. The pictures support Plaintiff's depiction of the office. They show the front counter with workstations on the other side of it. In the back corner

---

[2] Although Plaintiff used the word "roof," pictures of the office submitted by Defendants show that the walls of the cubicle did not extend to the ceiling.

[3] Plaintiff also alleged in his complaint that he overheard the conversation.

4

of the office is a cubicle that looks just like the cubicles seen in countless other offices. Although the parties mention a "doorway" to the cubicle, there is no actual door, just an opening for people to pass through.

The temp's affidavit also supports Plaintiff's depiction of the office and the circumstances of the recorded conversation. (*Id.* Ex. B.) She states that when the conversation occurred, the supervisor "was in her office," which the temp describes as "a private space with a partition that separated her space from the rest of the office." The temp was standing in the doorway to the cubicle and the supervisor was talking about interviews she had conducted to fill a new position. The temp states that they discussed Plaintiff, "so [she] is sure that [they] did not see that he was anywhere around." She does not recall that any members of the public were in the office either, but she does recall that they "were both talking softly, in kind of a confidential way, about a hiring decision [the supervisor] was going to have to make." The temp states that although she did not know Plaintiff had recorded any of her conversations, Plaintiff "frequently commented that he was going to tape record persons in the office in order to file a lawsuit." According to the temp, the conversation "was certainly intended to be private." (*Id.*)

In her affidavit, the supervisor claims that she did not know that Plaintiff was recording conversations in the office. She does not recollect the conversation at issue, but she states, "[A]nything that I said to another employee while I was in my own private office was intended to be private." (*Id.* Ex. C.) She states that the partition gave her some privacy. Finally, she asserts, "Certainly, I would not have been talking about [Plaintiff] if I had known he was anywhere in the vicinity." (*Id.*)[4]

---

[4] Plaintiff has filed an opposed motion for leave to file a surreply. (Doc. 54.) He argues that he should be allowed to respond to Defendants' reply because Defendants did not make any argument or submit

5

*Discussion*

A party who brings a motion in limine to exclude evidence has the burden of demonstrating that the evidence is inadmissible. *First Sav. Bank v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1082 (D. Kan. 2000). Accordingly, Defendants have the burden of showing that the participants in the conversation had a reasonable expectation of privacy.

The Supreme Court has rejected the idea that public employees can never have a reasonable expectation of privacy in their workplaces. *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987) (plurality opinion). Because of the great variety of work environments in the public sector, the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis. *Id.* at 718.

Courts have considered the following nonexclusive factors to evaluate subjective expectations of privacy in oral communications in publicly accessible spaces: 1) the volume of the conversation; 2) the proximity or potential of other individuals to overhear the conversation; 3) the potential for the conversation to be reported; 4) the affirmative actions taken by the speakers to shield their privacy; 5) the need for technological enhancements to hear the conversation; and 6) the place or location of the conversation as it relates to the subjective expectations of the individuals who are communicating. *See Kee v. City of Rowlett*, 247 F.3d 206, 213-15 & nn.12-17 (5th Cir. 2001) (citing cases). These factors tend to overlap.

---

any evidence regarding whether the conversation constitutes an "oral communication" until their reply. Attached to the proposed surreply is an excerpt of the supervisor's deposition, in which she admits that she does not remember the conversation. Therefore, Plaintiff argues, she cannot possibly claim that she intended the conversation to be private. Although I find it strange that Defendants failed to address the central issue presented by their motion until their reply, I conclude that they have not established that the conversation was an oral communication even after considering their late-presented evidence and arguments. Moreover, the excerpt of the supervisor's deposition would be cumulative because she acknowledged in her affidavit that she did not remember the conversation. For these reasons, I will deny the motion for leave to file a surreply.

6

It is doubtful whether Defendants have shown that the supervisor and the temp had a subjective expectation of privacy. The conversation occurred in the supervisor's cubicle, which was in a shared office. Although the temp claims they were "talking softly, in kind of a confidential way," it is clear from listening to the recording that they were not whispering. Moreover, the conversation was conducted at a volume that allowed it to be picked up by a recorder that was approximately four-feet away in Plaintiff's work area, which was against the front counter. The other side of the counter was open to the public. Defendants do not claim that the recorder could pick up anything that could not be heard with an unaided human ear. Other than claiming that the participants were talking softly, Defendants do not present evidence of any other affirmative actions they took to shield their privacy. Because the supervisor cannot remember the conversation, she cannot describe any action she took to maintain privacy. It is undisputed that the temp was standing in the doorway of the cubicle with her back turned to the exterior when the conversation occurred. If they wanted to keep the conversation private, it would have been better for both participants to be inside the cubicle walls or for the temp stationed in the doorway to have kept a lookout. *See Kemp v. Block*, 607 F. Supp. 1262, 1264 (D. Nev. 1985) (holding that it is appropriate to compare the precautions that were taken with the precautions that could reasonably have been taken). Although both sides agree that the supervisor and the temp appeared to be the only people in the area, the temp does not state that they waited until the office and surrounding area were deserted to begin the conversation. She simply says that she does "not recall that any members of the public were in the office at that time . . . " and that since they were talking about Plaintiff she is "sure that [they] did not see that he was anywhere around." (Doc. 48 Ex. B.)

Defendants suggest that the supervisor demonstrated a subjective expectation of privacy by stating that she was "not supposed to talk about this." One district court has stated that a person may

7

exhibit a subjective expectation of privacy by making comments such as "just between you and me," "off the record," or "can we discuss this matter in private?" *Pattee v. Georgia Ports Auth.*, 512 F. Supp. 2d 1372, 1377 (S.D. Ga. 2007). Defendants argue that the supervisor's statement is similar to these comments. Saying that a matter is not supposed to be discussed while simultaneously discussing the matter does not articulate an expectation of privacy as clearly as the comments in *Pattee*. But because the supervisor's comment arguably indicates an expectation of privacy, I will consider the comment as some evidence supporting the subjective component of the test.

Defendants also argue that the nature of the conversation demonstrates the participants' subjective expectation of privacy because the conversation involved "a staffing issue and a comment was made about Plaintiff." (Doc. 48 at 3.) They rely on *Dorris v. Absher*, 179 F.3d 420 (6th Cir. 1999). In that case, a supervisor secretly recorded conversations among four of his employees by placing a tape recorder in their common office. The Sixth Circuit held that "the frank nature of the employees' conversations makes it obvious that they had a subjective expectation of privacy." *Dorris*, 179 F.3d at 425. The court believed that "no reasonable employee would harshly criticize the boss if the employee thought that the boss was listening." *Id.* Although it is sensible to assume that employees would not want their supervisor to hear them criticize him, supervisors are unfortunately not always as reluctant to let others hear them criticize an employee. Here, for example, the supervisor was letting a temp know about her dissatisfaction with Plaintiff. However, because the supervisor's comments seem to suggest improper motives, I will consider the contents of the conversation as some evidence supporting the subjective component of the test.

Assuming for purposes of argument that the participants in the conversation had a subjective expectation of privacy, that expectation was not objectively reasonable. Defendants argue that this case is similar to *Dorris*. In *Dorris*, the supervisor placed a recorder on the top shelf of a cabinet

8

in the storage room/bathroom that adjoined the office he shared with four employees. The court concluded that the employees had a reasonable expectation of privacy, noting that the office was a small, relatively isolated space, consisting of a single room that could not be accessed without the employees' knowledge. The conversations occurred only when no one else was present and stopped when the telephone was being used or anyone turned onto the gravel road that was the only entrance to the office. The court distinguished this situation from a situation in which a shared office was part of a larger office complex where others could easily overhear conversations. *Id.* at 425.

Unlike in *Dorris*, there is no evidence in this case that the participants "could be sure that no one was in the building without their knowledge." *Id.* The conversation did not stop when Plaintiff entered the area. This case is more like a case cited by Plaintiff—*Tancredi v. Malfitano*, 567 F. Supp. 2d 506 (S.D.N.Y. 2008).

In *Tancredi*, police department employees alleged that the defendants surreptitiously altered the department's 911 communications system to record the conversations of any person at the front desk area in the department's headquarters. The headquarters building was open to the public, and the front desk served as the department's reception desk, where any member of the public might approach. Although a glass partition separated the officer side of the desk from the public-visitor side, there was a large central opening in the glass that could not be closed. Adjacent to the front desk was a holding cell. There were substantial periods of time when the cell was unoccupied, but when it was occupied, the occupant could hear what occurred at the front desk. All department employees had unfettered access to enter the officer side of the front desk at any time, even if not assigned to work there. Mailboxes, a computer station, and a bulletin board were located there. Outside the weekday hours of 9:00 a.m. to 5:00 p.m., the building was devoid of people other than

9

those working at the front desk. The court held that the employees did not have an objectively reasonable expectation of privacy at the front desk. It reasoned as follows:

> Plaintiffs argue that beyond the hours of 9:00 a.m. to 5:00 p.m., Monday through Friday, there are no visitors in Headquarters, and individuals placed in the holding cell are only placed there for a short period of time. However, Headquarters is open to the public during all hours and at any time a member of the public can enter the reception area. The natural rhythm of life, in which most activity occurs during typical "working hours," does not change the fact that the area is open and accessible to the public at any time. Additionally, plaintiffs' argument fails to account for the fact that officers on duty, during any shift, have open and continuous access to the officer side of the front desk. The fact that the area, at any time, is open to the public and is a common workplace makes any expectation of privacy in this area unreasonable. Finally, the very nature of the work that occurs at the front desk—serving the public in person or by receiving 911 calls—does not support a notion of privacy.

*Tancredi*, 567 F. Supp. 2d at 512; *see also United States v. Little*, 753 F.2d 1420, 1436 (9th Cir. 1984) ("Since the public and office workers are allowed to walk freely into a reception area, an individual working in the office can have no reasonable expectation of privacy there.").

Here, Plaintiff recorded a conversation that occurred during working hours. Although the participants in the conversation appeared to be the only ones there during the conversation, the public or other staff members could enter the area at any time. And as in *Tancredi*, the recorder was placed near a reception desk for members of the public. The conversation occurred approximately four feet from the recorder.

Defendants argue that this case is distinguishable from *Tancredi* because the conversation here occurred in the supervisor's personal office rather than in a public space. Although Defendants wish to characterize the supervisor's area as a "personal office," the pictures and verbal descriptions of the area demonstrate that it was nothing more than a cubicle, separated from the rest of the room only by partitions that topped out significantly below the ceiling. *Cf. United States v. McIntyre*, 582 F.2d 1221, 1224 (9th Cir. 1978) (holding that an office need not be sealed to afford its occupant a

reasonable expectation of privacy and concluding that a person had a reasonable expectation of privacy in his office, which had been bugged, even though his door was open during the bugging and another employee worked fifteen feet away in an adjacent room, but it was difficult to overhear conversations in the office when the door was open).

Defendants have not established that the supervisor and the temp had an objectively reasonable expectation of privacy. Therefore, their conversation does not constitute an "oral communication" within the meaning of the federal wiretap act.

### STATE LAW

Defendants' motion in limine asserts that the recording "was made illegally in violation of state and federal law." (Doc. 44 at 1.) In addition to the argument concerning the federal wiretap act, the memorandum in support of the motion states that the recording "appear[s] to be in violation of New Mexico law." (Doc. 45 at 2.) Defendants proceed to discuss New Mexico statutory and common law, noting that "New Mexico does not have any statutory law dealing with the surreptitious tape recording of conversations," but "there is a related criminal statute," which makes it a misdemeanor to intercept a telegraph or telephone communication without consent. (*Id.* at 2-3.) Defendants concede that since this statute is limited to communications through telegraphs or telephones, it is inapplicable to a face-to-face conversation. Then Defendants acknowledge that "it appears that the general common law rule in New Mexico is that one who voluntarily enters into a conversation with another takes the risk that the other person may memorize, record or even transmit the conversation." (*Id.* at 3.) After citing one case in support of this proposition, Defendants include an additional citation as follows: "See also Moore v. Sun Publishing Corp., 118 N.M. 375, 383, 881 P.2d 735 (Ct. App. 1994) (common law claim for invasion of privacy may include intrusion, such as eavesdropping on private conversations.)." (*Id.*) Immediately after this citation, Defendants

11

state, "Fortunately, however, because we are in federal court and the question is one of admissibility of evidence, federal law will control." (*Id.*)

While noting that Defendants' memorandum is confusing on this point, Plaintiff interprets the memorandum as acknowledging that the recording was not illegal under state law. In their reply, however, Defendants state that the "recording was in violation of New Mexico common law." (Doc. 48 at 6.) They contend that "Plaintiff misse[d] the point" of the discussion of New Mexico law in the memorandum. (*Id.*) They argue that although no New Mexico statute specifically prohibits what occurred in this case, "a recording made without consent or participation of any of the participants to the conversation is in violation of New Mexico common law under an invasion of privacy theory." (*Id.*) For this proposition, Defendants cite the *Moore* case that was included in their opening memorandum. Defendants again conclude, however, that federal law controls.

I agree with Plaintiff that Defendants' arguments on this issue are confusing. Although Defendants accuse Plaintiff of missing the point, Plaintiff could hardly be expected to have discerned the thrust of Defendants' state law argument from an explanatory parenthetical following a "see also" signal.

Nevertheless, I agree with Defendants that federal law controls. In another employment discrimination suit, a federal court refused to exclude a recording made in violation of a California statute, because the court's subject matter jurisdiction was premised on a federal question. *See Zhou v. Pittsburgh State Univ.*, 252 F. Supp. 2d 1194, 1203-04 (D. Kan. 2003), *aff'd*, 2004 WL 1529252 (10th Cir. 2004). The court observed that the Ninth Circuit had held that the California statute constitutes substantive law that should be enforced in diversity cases. But given that this was not a diversity case, the evidence, though obtained in contravention of state law, was admissible as long as no federal law was violated. *Id.*; *accord Pattee*, 512 F. Supp. 2d at 1375; *see also Sims v. Great*

*Am. Life Ins. Co.*, 469 F.3d 870 (10th Cir. 2006) (explicating the Tenth Circuit's approach to determining whether state substantive policies govern the admissibility of evidence in diversity cases).

Here, jurisdiction is premised on a federal question, as the majority of Plaintiff's claims invoke federal law. Although the complaint includes one claim under the New Mexico Human Rights Act, Defendants have not argued that the inclusion of this claim requires the application of substantive state evidentiary rules and have not cited a New Mexico case holding that similarly obtained evidence was inadmissible. Instead they concede, both in their opening memorandum and in their reply, that federal evidentiary rules control this case. I therefore decline to consider whether the recording would be inadmissible under New Mexico law.

## CONCLUSION

For the reasons stated above, Defendants' motion in limine and Plaintiff's motion for leave to file a surreply are denied.

IT IS SO ORDERED.

*William P. Lynch*
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.